IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD ALLEN HOVDE, ) | |
| ) | |
| Plaintiff, ) | Case No. CV04-448-S-EJL |
| ) | |
| vs. ) | **MEMORANDUM ORDER** |
| ) | |
| THOMAS BEAUCLAIR, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This case was reassigned to this Court for lack of all parties' consent to the jurisdiction of a United States Magistrate Judge to enter final orders in this matter. Pending before the Court in this civil rights action are the following: IDOC Defendants' Motion to Dismiss (Docket No. 14-1), or in the alternative, Motion for Summary Judgment (Docket No. 14-2) (joined by PHS Defendants in Docket No. 17), and Plaintiff's Motion for Preliminary Injunction (contained in the Complaint, Docket No. 3). Having reviewed the record in this case, and having considered the motions and responses, the Court enters the following Order.

I.

**MOTION TO DISMISS, OR IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT**

**A.    Background**

Plaintiff, an inmate in the custody of the Idaho Department of Correction (IDOC), has suffered from abdominal problems, ranging from pain to blood in his stool, for a period of

**ORDER  1**

several years. He has undergone extensive medical testing at the prison to determine a diagnosis, but all of the tests have been negative. He was recently diagnosed with Irritable Bowel Syndrome, which is the diagnosis given when all others have been ruled out.

Plaintiff alleges that IDOC Director Beauclair and Idaho Maximum Security Institution (IMSI) Deputy Warden Johnson "ignored the fact that Prison Health Services has inadequate medical care." He also lists fourteen other individuals, and alleges that twelve of the fourteen "either prognosed [sic] or helped with the diagnoses of Mr. Richard Allen Hovde" and that they "denied [him] medical help." *See Complaint* (Docket No. 3).

The IDOC Defendants have filed a Motion to Dismiss, asserting that Plaintiff did not properly exhaust his administrative remedies. Alternatively, Defendants assert that Plaintiff has received adequate health care, and that they are entitled to summary judgment on the merits of Plaintiff's claims. Plaintiff was previously given notice that he should respond to the alternative Summary Judgment Motion. *See Order of May 11, 2005* (Docket No. 27). In response, Plaintiff filed a set of medical records. *See Plaintiff's Medical Records* (Docket No. 30). Plaintiff has also been provided with the "Notice to Pro Se Litigants of the Summary Judgment Rule Requirements" (Docket No. 20).

**B.     Motion to Dismiss re: Failure to Exhaust Administrative Remedies**

1.     Standard of Law

Section 1983 claims are subject to 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

**ORDER  2**

until such administrative remedies as are available are exhausted." The Supreme Court has held that where an inmate seeks money damages for a prison conditions claim, he or she must complete the prison administrative process for the claims, even if the process does not provide for money damages. *Booth v. Churner*, 532 U.S. 731 (2001). If a plaintiff has failed to exhaust his administrative remedies, his claim is subject to dismissal without prejudice upon motion of the defendants. *Wyatt*, 315 F.3d at 1119. In *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), the Ninth Circuit determined that the proper procedural device for alleging nonexhaustion of administrative remedies is "an unenumerated Rule 12(b) motion." *Id*. at 1119. To resolve such a motion, "the court may look beyond the pleadings and decide disputed issues of fact." *Id*. at 1119-20. In such instances, the court "has a broad discretion as to the method to be used in resolving the factual dispute." *Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988). However, the court "must assure that [the petitioner] has [had] fair notice of his opportunity to develop the record." *Id*. at 1120 n.14. Because failure to exhaust is an affirmative defense, *Wyatt*, 315 F.3d at 1119, Defendants bear the burden of proving nonexhaustion.

   2.   Discussion

Defendants assert that Plaintiff did not complete all levels of administrative review and that, therefore, his claims are not exhausted as required by § 1997(e)(a). Plaintiff counters that he did, in fact, submit his grievances through all levels of review. It appears that Plaintiff attempted to resolve his problems with prison officials according to his understanding of the somewhat complex grievance procedure. However, the Court will

**ORDER 3**

reserve ruling on the failure to exhaust issue because it has determined that Plaintiff's claims are subject to dismissal with prejudice on the merits, as explained below.

The Court also notes that it is unclear whether the Prison Health Services (PHS) Defendants are joining in only the Motion to Dismiss or both the Motion to Dismiss and the Alternative Motion for Summary Judgment filed by the IDOC Defendants.  *See Joinder* (Docket No. 17).  Because the PHS Defendants are clearly entitled to summary judgment on the facts presented in the record, the Court shall construe the joinder as a joinder in both Motions (Docket No. 14-1 and 14-2).  If this is not what the PHS Defendants intend, or if Plaintiff has anything further in response to summary judgment as it relates specifically to the PHS Defendants, the parties may file a motion for reconsideration within ten (10) days after their receipt of this Order.

**C.**     **Motion for Summary Judgment: Eighth Amendment Claim**

1.     Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

**ORDER  4**

as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 377 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

Plaintiff asserts that Defendants were deliberately indifferent to his medical care. To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate

**ORDER 5**

indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim.  *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Mere indifference, medical malpractice, or negligence also will not support a cause of action under the Eighth Amendment.  *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980).  A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm.  *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).

    2.    Discussion

Plaintiff first complained of abdominal pain in January 2001 while he was housed at the Idaho Correctional Institution - Orofino (ICI-O).  He was referred to Dr. Murray Larson, a specialist in liver and digestive diseases.  Dr. Larson ordered a colonoscopy and ileoscopy for Plaintiff.  The colonoscopy included biopsies to rule out microscopic colitis.  The results

**ORDER  6**

of these tests were negative. *Affidavit of Dr. Rebekah Haggard*, at ¶¶ 3-4 (Docket No. 18).

After January 2001, Plaintiff was treated in the prison medical department for abdominal pain complaints. He received physical exams (and on some occasions a urinary analysis lab test), and he was given medication for pain, diarrhea, constipation, and gas. In February 2002, he was treated for diarrhea again. *Id*. at ¶¶ 5-6.

In July 2002, Plaintiff reported cramping and diarrhea associated with intake of milk products. Medical personnel advised Plaintiff to try a lactose-free diet and prescribed Ibuprofen for his pain. *See Plaintiff's Medical Records*, at p. 37 (Docket No. 29-1).

Plaintiff complained of further symptoms in September 2002, when he was seen in the medical department for diarrhea. He was given a medical examination and told to take Pepto-Bismol for his condition. *Affidavit of Dr. Rebekah Haggerty,* at ¶ 6.

Plaintiff complained of further symptoms in June 2003, when he was seen in the medical department for abdominal pain. He was evaluated and treated for gas. *Id*. at ¶ 7.

Plaintiff was transferred from ICI-O to Idaho Maximum Security Institution (IMSI) in December 2003. He complained of abdominal pain on May 7, 2004. Plaintiff told the nurse that his pain occurred when he was constipated. *Id*. at ¶¶ 8-9.

On June 8, June 24, and July 8, 2004, Plaintiff was seen for abdominal pain by Physician Assistant Corey Riggs. Plaintiff was examined, given a urinary analysis, given diet instructions, and given an antibiotic for treatment of any urinary tract infection. On July 8, Riggs ordered an x-ray of Plaintiff's kidney, urinary tract, and bladder. The x-ray showed no abnormalities. *Id*. at ¶¶ 10-13.

**ORDER 7**

On July 20, Plaintiff complained of abdominal pain and blood in his stool. He completed a hemoccult test, which had positive results for "frank" or fresh blood. During a rectal exam with hemoccult test, there were no traces of blood. *Id*. at ¶ 14.

On July 28, and August 30, 2004, Plaintiff saw Dr. Haggard, who noted that his blood tests results did not indicate anemia or internal bleeding and that his stool samples were yellow in color rather than a brown or black color that is indicative of blood in the stool. She ordered a barium enema. The results were negative. *Id*. at ¶ 16.

On September 2, 2004, Plaintiff saw Riggs for complaints of abdominal pain. Plaintiff's vital signs were stable, and the exam did not reflect an "acute abdomen." Riggs prescribed antibiotics and a steroid for infectious colitis. *Id*. at ¶ 17.

On September 4, 2004, Plaintiff was admitted to the infirmary with complaints of abdominal pain. On September 7, 2004, he reported significant improvement, stating that "being in medical and relaxing did help him feel better." *Id*. at ¶ 18.

On September 9, 2004, Dr. Haggard had a follow-up visit with Plaintiff and reviewed his history of abdominal pain with him. At that time, Plaintiff stated that he believed his problems were stress-related. Dr. Haggard discussed changes in diet and prescribed Bentyl for Irritable Bowel Syndrome. She arrived at this symptom after reviewing all of the test results. Irritable Bowel Syndrome is a diagnosis of "exclusion," meaning that all other diagnoses have been ruled out by the testing. *Id*. at ¶¶ 19 & 27.

On October 28, 2004, Plaintiff was examined by Physician Assistant Ryan Andrus. Andrus thought that Plaintiff's anxiety and psychological issues were related to Plaintiff's

**ORDER 8**

abdominal problems, and thus referred Plaintiff to the mental health unit. *Id*. at ¶ 21.

In summary, Plaintiff has received extensive health care for his abdominal problems, even though they have not been resolved. In his responsive briefing, Plaintiff has not shown how the foregoing treatment constituted deliberate indifference. To the contrary, the record demonstrates that Plaintiff has been provided with a wide array of tests and medications to attempt to solve his abdominal problems. The Ninth Circuit recently clarified that if medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment is proper. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004). Here, prison medical staff were indeed consistently responsive, and there has been no showing that any knew of a risk and consciously disregarded it. Rather, it appears that medical staff have put forth extensive efforts to solve Plaintiff's abdominal problems.

The Court notes that some of the Defendants are correctional officers and other non-medical officials. "[P]rison officials are entitled to rely on the opinions, judgment, and expertise of prison medical personnel in determining the course of treatment that is medically necessary and appropriate for an inmate." *Wynn v. Mundo*, 367 F.Supp. 2d 832, 337-38 (D. N.C. 2005). There have been no assertions of fact that the non-medical personnel unreasonably delayed or interfered with Plaintiff's treatment. Accordingly, all IDOC Defendants are entitled to summary judgment.

Plaintiff has submitted a set of recent medical records, in which he appears to be

**ORDER  9**

asserting that he recently has been denied adequate *mental health* treatment.  *See Plaintiff's Medical Records* (Docket No. 30).  Because Plaintiff's mental health treatment is only tangentially related to his abdominal problems and different state actors are involved, the Court declines to extend this case to cover new claims.  Accordingly, Plaintiff may file a separate complaint after exhausting his remedies as to his mental health care, if necessary.  The records Plaintiff has submitted do not show that the current Defendants have been deliberately indifferent to his abdominal problems.

**D.    Motion for Summary Judgment: Fourteenth Amendment Claim**

Plaintiff asserts that the foregoing facts constitute a violation of his Fourteenth Amendment due process rights.  The Supreme Court has instructed the federal courts that, whenever possible, they should analyze constitutional claims using an "explicit textual source of constitutional protection," such as the Fourth Amendment, rather than using "the more generalized notion of 'substantive due process.'"  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Under the *Graham* principle, Plaintiff's claim is more appropriately construed as an Eighth Amendment claim than a Fourteenth Amendment substantive due process claim.  As noted above, Plaintiff's medical treatment does not meet the Eighth Amendment deliberate indifference standard, and, therefore, all of his claims are subject to summary judgment.

**II.**

**REQUEST FOR PRELIMINARY INJUNCTION**

Also in his Complaint, Plaintiff asserted that he is not receiving proper care for his

**ORDER  10**

abdominal problems, including "internal bleeding," and that a preliminary injunction should be issued to require additional care. *See Complaint* (Docket No. 3). As noted above, the Court ordered Defendants to provide all of Plaintiff's relevant medical records to the Court. The Court has reviewed the medical records, as well as the pleadings and papers filed in this case. Because Plaintiff is not entitled to relief on the merits of his Complaint as explained above, he is not entitled to a preliminary injunction.

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.  Defendants' Motion to Dismiss (Docket No. 14-1) is MOOT, and their Motion for Summary Judgment (Docket No. 14-2) is conditionally GRANTED.

B.  Plaintiff's Motion for Preliminary Injunction (contained in the Complaint, Docket No. 3) is DENIED.

C. The parties may file motions to reconsider within ten (10) days after their receipt of this Order if they wish to present any additional facts or argument regarding the PHS Defendants' entitlement to summary judgment.

DATED: **September 1, 2005**

Honorable Edward J. Lodge
U. S. District Judge

**ORDER  12**